UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARLOS RODRIGUEZ,

                 Petitioner,

- *against* -

JOSETH SMITH, Superintendent

                 Respondent(s).

07 Civ. 9272 (RJH) (PED)

**REPORT AND RECOMMENDATION**

TO:    THE HONORABLE RICHARD J. HOLWELL,
        UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Carlos Rodriguez ("Petitioner") seeks, by his *pro se* petition, a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, from his March 23, 1999 conviction entered in Westchester County Court (Zambelli, J.). On October 10, 2006, the Appellate Division, Second Department, modified Petitioner's conviction of second-degree depraved indifference murder by reducing it to second-degree reckless manslaughter and vacating its sentence of imprisonment. Petitioner was thereafter re-sentenced on the manslaughter conviction to an indeterminate term of seven and one-half to fifteen years imprisonment. Petitioner now seeks federal *habeas* relief from his modified judgment of conviction. This petition comes before me pursuant to an Order of Reference dated October 24, 2007, (Docket No. 2), which was reassigned to me on January 12, 2009, (Docket No. 9). For the reasons set forth below, I respectfully recommend that this petition be **DENIED**.

## II. BACKGROUND

A.    <u>The Crime, Trial, and Original Sentence</u>

The facts related to the underlying criminal offense may be briefly summarized. On

November 4, 1997, while incarcerated at Sing Sing Correctional Facility in Ossining, New York, Barry Shawn ("Shawn") was stabbed by Petitioner, a fellow inmate, with a sharpened piece of metal, in his chest, back, and arm, and subsequently died from his injuries. (See Resp't Aff. in Opp'n to Pet. for Writ of Habeas Corpus (hereinafter "Resp't Aff."), at 2-8 (Docket No. 5)). After receiving Miranda[1] warnings, Petitioner provided a written confession to police stating that Shawn had repeatedly made verbal, homosexual advances towards Petitioner, and that although Petitioner had always rejected such advances in the past, on that day, Shawn had physically grabbed Petitioner's genitals. (See id.; Trial Tr., at 1513-14 (reading Petitioner's written statement into the record at trial)). Fearing that he would be sodomized, Petitioner confessed that he grabbed his "shank," chased Shawn as Shawn ran away, and stabbed Shawn. (Trial Tr., at 1514-15). Petitioner also stated that he "didn't mean to kill" Shawn. (Id. at 1514).

Petitioner was indicted on charges of: (1) murder in the second degree (intentional murder),[2] (2) murder in the second degree (depraved indifference murder),[3] and (3) manslaughter in the first degree (intentional manslaughter).[4] (Indictment (attached to Resp't Mem. of Law &

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] "A person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person or of a third person . . . ." N.Y. Penal Law § 125.25(1)

[3] "A person is guilty of murder in the second degree when . . . [u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person . . . ." N.Y. Penal Law § 125.25(2).

[4] "A person is guilty of manslaughter in the first degree when . . . [w]ith intent to cause serious physical injury to another person, he causes the death of such person or of a third person . . . ." N.Y. Penal Law § 125.20(1).

2

Resp't App. (hereinafter "Resp't Mem."), at Ex. A (Docket No. 6))).[5] At trial, Petitioner presented a justification defense, which the court also instructed the jury on. (See Trial Tr., at 2071-77). After the State presented its case in chief, Petitioner's attorney moved for a trial order of dismissal and argued that the State, by introducing Petitioner's written confession, had failed to make a prima facie showing that Petitioner had acted with the mental state required to prove intentional murder.[6] (See id. at 1757-65). The motion was denied.[7] (Id. at 1768).

The jury returned a verdict acquitting Petitioner of intentional murder and finding Petitioner guilty of depraved indifference murder. (Id. at 2118-20, 2084). The jury also rejected Petitioner's justification defense. (See id. at 2118-20, 2071-77). Petitioner was thereafter sentenced on March 23, 1999 to a term of twenty-five years to life imprisonment. (See Resp't Aff., at 10).

## B. Direct Appeal and Re-Sentence

On direct appeal, Petitioner argued that the evidence adduced at trial was legally insufficient to support a conviction for depraved indifference murder because the evidence showed that this was a "classic intentional murder." (Br. of the Def.-Appellant, at 20 (Ex. I)); see People v. Rodriguez, 826 N.Y.S.2d 271, 272 (App. Div. 2006). On October 10, 2006,

---

[5] All exhibits cited herein are attached to Resp't Mem. (Docket No. 6).

[6] Counsel also argued the State had failed to make a prima facie showing of the mental states required to prove depraved indifference murder and intentional manslaughter. (See Trial Tr., at 1757-65).

[7] Counsel renewed the motion, on the same grounds, after the defense rested. (Trial Tr., at 1999). The motion was denied. (Id.)

relying in part on the recent decision in People v. Suarez, 6 N.Y.3d 202 (2005),[8] the Appellate Division, Second Department modified Petitioner's conviction by reducing the second-degree murder conviction to second-degree reckless manslaughter and vacating the sentence imposed.[9] Rodriguez, 826 N.Y.S.2d at 272-73. The Second Department held that "although the evidence here was legally sufficient to establish that the defendant caused the death of the deceased recklessly, it was not legally sufficient to prove that he did so under circumstances evincing a depraved indifference to human life." Id. at 273. On February 13, 2007, Petitioner was then re-sentenced on the second-degree manslaughter conviction to a term of seven and one-half to fifteen years imprisonment. (See Resp't Aff., at 11). The sentencing court also ordered that this sentence would run consecutive to the conviction for which Petitioner was already at Sing Sing serving time for. (See id.)

After Petitioner's re-sentencing, Petitioner sought leave, by letter dated March 9, 2007, to appeal the decision of the Second Department to the New York State Court of Appeals. (Ex. F). In that letter, Petitioner asked the Court of Appeals to consider only one claim, "that the

---

[8] Between 2002 and 2006, New York's interpretation of the statutory requirements of depraved indifference murder had changed. Prior to this time, the New York State Court of Appeals had held that this offense required a reckless state of mind, and that its element "under circumstances evincing a depraved indifference to human life" referred to an objectively determined degree-of-risk standard. See People v. Register, 60 N.Y.2d 270 (1983); People v. Sanchez, 98 N.Y.2d 373 (2002). Through a series of cases, the New York State Court of Appeals gradually chipped away at this interpretation. See People v. Hafeez, 100 N.Y.2d 253 (2003); People v. Gonzalez, 1 N.Y.3d 464 (2004); People v. Payne, 3 N.Y.3d 266 (2004); Suarez, 6 N.Y.3d at 212-15. In 2006, the Court of Appeals explicitly overturned its previous interpretation, holding that "under circumstances evincing a depraved indifference to human life" – not recklessness – was the culpable mental state for the offense. People v. Feingold, 7 N.Y.3d 288 (2006); see also, e.g., Mannix v. Phillips, 619 F.3d 187, 197-98 (2d Cir. 2010), cert. denied, 131 S. Ct. 611 (2010) (describing New York's changed depraved indifference law).

[9] "A person is guilty of manslaughter in the second degree when . . . [h]e recklessly causes the death of another person." N.Y. Penal Law § 125.15(1).

4

evidence was legally insufficient to sustain defendant's conviction for depraved indifference murder." (Id.) Petitioner, however, argued that the evidence adduced at trial could have only proven that his "state of mind when he decided to enter his cell, picked up the weapon and then attacked the deceased was, at a minimum to 'intentionally' cause serious physical harm," and that accordingly, the Second Department had erred when it modified his conviction to second-degree manslaughter, a crime requiring proof of a reckless *mens rea*. (Id.) Petitioner reiterated this argument in a subsequent letter to the Court of Appeals:

> Defendant's action[ ] was a classic intentional act. By Defendant picking up a shank concealed in his cell and deliberately running after the deceased while the deceased is running from defendant, stabbing him three times, twice in the torso, front and back, this was an intentional act without any room to argue it was reckless. The Appellate Division's defining the instant offense as a reckless act can mislead other courts in distinguishing a similar incident as reckless when it should have been intentional. It should be corrected by this Court.

(Ex. E, at p.2). The Court of Appeals denied Petitioner leave to appeal on June 13, 2007. People v. Rodriguez, 9 N.Y.3d 850 (2007). Petitioner has not directly appealed his February 13, 2007 re-sentencing. (See Aff. in Reply to Resp't Opp'n to Pet. for Writ of Habeas Corpus (hereinafter "Pet'r Reply"), at 1 (Docket No. 7)).

### C.   State Collateral Proceedings

By motion dated January 24, 2001 – prior to the Second Department's modification of Petitioner's conviction on direct appeal – Petitioner, proceeding *pro se*, sought to vacate the judgment of his conviction pursuant to N.Y. Crim. Proc. Law § 440.10 on the ground that he had received ineffective assistance of trial counsel due to counsel's alleged failure to advise Petitioner of the defense of extreme emotional disturbance. (Ex. O). The motion was denied on June 27, 2001. (Ex. N). The Second Department denied leave to appeal on October 24, 2001. (Ex. K).

**D.**     *Habeas Corpus* **Proceedings**

By petition dated September 17, 2007, Petitioner filed for a writ of *habeas corpus* in which he argues that the evidence adduced at trial was legally insufficient to support a conviction of manslaughter in the second degree.[10] (See Pet. Under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody (hereinafter "Pet.") (Docket No. 1); Mem. of Law for the Pet'r in Support of Habeas Corpus Pet. (hereinafter "Pet'r Mem."), at 3, 15 (attached to Pet.); see also Pet'r Reply, at 2-3 (stating that any claim raised in Petitioner's § 440.10 motion "has nothing to do with the instant action" for *habeas corpus*)).

## III. DISCUSSION

**A.**     **Applicable Law**

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d). The procedural and substantive standards applicable to *habeas* review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are summarized below.

**1.**     *Timeliness Requirement*

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of

---

[10] The petition was timely filed. See 28 U.S.C. § 2244(d)(1)-(2).

limitations. See 28 U.S.C. § 2244(d). The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply. See id. § 2244(d)(1). Under the statute, the limitation period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition. See id. § 2244(d)(2). The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have

"prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing – a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

### 2. *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin

v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual

9

innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3. *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "'fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

### 4. *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas*

10

relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims. 28 U.S.C. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim - -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

11

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.      Analysis of Petitioner's Claim**

Petitioner asserts that the evidence adduced at trial was legally insufficient to support a conviction for depraved indifference murder. (See Pet'r Mem., at 16). However, Petitioner also argues that the Appellate Division's decision, which modified the judgment of his conviction to reckless manslaughter, was an unreasonable application of clearly established Supreme Court law because the evidence at trial could only support a finding that Petitioner had acted with an intentional – not a reckless – mental state. (See id. at 15-17).

> [T]he appellate division's decision goes against established statutory and case law. The court's decision is unsound because there was not legally sufficient evidence to establish that the petitioner caused the death of Barry Shawn reckless [sic]. This decision cannot stand as a reckless act because petitioner's actions were a classic intentional act. Petitioner retrieved a shank concealed in his cell and deliberately ran after the victim, stabbing him three times, twice in the torso, front and back, [which] was an intentional act without any room to argue it was reckless. Recklessness was not shown.

(Id. at 15). Accordingly, Petitioner asserts that his conviction for reckless manslaughter should be set aside and "the whole indictment dismiss[ed]." (Id. at 17). Respondent contends that the Appellate Division's determination that the evidence was sufficient to convict Petitioner of the reckless crime was neither contrary to, nor an unreasonable application of, clearly established federal law. (See Resp't Mem., at 5-10).

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact

necessary to constitute the crime with which he is charged." Jackson v. Virginia, 443 U.S. 307, 315 (1979) (internal quotation omitted). However, on *habeas* review, a claim of legally insufficient evidence will not succeed where, "after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. A *habeas* petitioner, therefore, "bears a very heavy burden" to show that no rational jury could have found the substantive elements of the offense beyond a reasonable doubt and succeed on such a claim. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000) (internal quotation omitted). In addition, "when it considers the sufficiency of the evidence of a state conviction, a federal court must look to state law to determine the elements of the crime." Id.

In this case, Petitioner has failed to establish that, at the time he was tried, no reasonable jury could have convicted him of manslaughter in the second degree. Under New York law, a person is guilty of manslaughter in the second degree when he (1) "recklessly," (2) "causes the death," (3) "of another person." N.Y. Penal Law § 125.15(1). Petitioner specifically disputes only the first element. Under New York law,

> A person acts recklessly with respect to a result . . . when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur . . . . The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

Id. § 15.05(3).

The record indicates that there was sufficient evidence from which a rational jury could find beyond a reasonable doubt that Petitioner had acted with a reckless mental state. The evidence presented included testimony that Petitioner had been repeatedly solicited by Shawn for sex, that Shawn had grabbed Petitioner's genitals, that Petitioner then grabbed a shank and

13

chased after Shawn, that Petitioner caught up with Shawn and stabbed him three times, and that – by Petitioner's own admission – he did not intend to kill Shawn. If the jury chose to believe Petitioner's own statement, then it is certainly reasonable for the jury to conclude that Petitioner had acted, not with an intent to cause the resulting death, but rather with a conscious disregard of a substantial, unjustifiable, and known risk that Shawn could die as a result of Petitioner's actions. See, e.g., McMillon v. Culley, 380 Fed. Appx. 63, 65-66 (2d Cir. 2010), cert. denied, 131 S. Ct. 426 (2010) (under New York law, federal *habeas* petitioner's conviction, which had been reduced on direct appeal from depraved indifference murder to reckless manslaughter, was supported by legally sufficient evidence where petitioner had stated that he did not intend to kill victim);[11] People v. Lawhorn, 804 N.Y.S.2d 517, 518 (App. Div. 2005) (reckless manslaughter conviction affirmed where defendant admitted he voluntarily stabbed victim in the chest, but asserted he did so only to inflict pain and not to kill).

Furthermore, Petitioner's contention that it was simply possible, through circumstantial evidence presented at trial, for the jury to find that Petitioner had intended to kill Shawn – despite his statement to the contrary, (see Pet'r Mem., at 15 (arguing that Petitioner's statement that he did not mean to kill the victim "does not preclude" a finding that Petitioner had actually acted with intent to kill); id. at 19 (chasing and stabbing Shawn "can be determine[d] as circumstantial evidence that it was an intentional act")), is insufficient to meet Petitioner's heavy *habeas* burden showing that *no* rational jury could have determined that he acted with a reckless *mens rea*. See Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002) (internal citation omitted) (upon *habeas* review of a legal insufficiency of the evidence claim, "the government receives the

---

[11] Copies of unreported cases cited herein will be mailed to Petitioner. See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

14

benefit of having all permissible inferences drawn in its favor"); id. (internal citation omitted) ("the government's case need not refute every possible hypothesis supporting a defendant's [argument]"). Accordingly, Petitioner's claim must be denied.

## IV. CONCLUSION

For the reasons set forth above, I conclude – and respectfully recommend that Your Honor should conclude – that the petition be **DENIED**. Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued. See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Richard J. Holwell at the United States Courthouse, 500 Pearl Street, Courtroom 17B, New York, New York 10007, and to the chambers of the undersigned at the United States Courthouse, 300 Quarropas Street, White Plains, New York 10601.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

15

      Requests for extensions of time to file objections must be made to Judge Holwell.

Dated: April 13, 2011
      White Plains, New York

                                          Respectfully Submitted,

                                          Paul E. Davison
                                          United States Magistrate Judge
                                          Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

                The Honorable Richard J. Holwell
                United States Courthouse
                500 Pearl Street
                Courtroom 17B
                New York, New York 10007

                Carlos Rodriguez, *pro se*
                88-B-0742
                Shawangunk Correctional Facility
                P.O. Box 700
                Wallkill, NY 12589

                John James Sergi, Esq.
                Office of the Westchester County District Attorney
                111 Dr. Martin Luther King, Jr. Blvd.
                White Plains, NY 10601